# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 04-3172

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LAVELL DEAN,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03-CR-266—**Rudolph T. Randa**, *Chief Judge*.

_____

ARGUED JUNE 3, 2005—DECIDED JULY 7, 2005

_____


Before CUDAHY, POSNER, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. A federal jury convicted Lavell Dean of being a felon in possession of a firearm, and the district judge sentenced him to 120 months in prison. The appeal, which challenges only the sentence, presents an important issue—the role of 18 U.S.C. § 3553(a) in sentencing—presented, but left unresolved, by *United States v. Booker*, 125 S. Ct. 738 (2005).

The Presentence Investigation (PSI) report on Dean recounted the following facts. A squad car rolled up in front of a house in Milwaukee that the police suspected of being

the site of illegal drug dealing. Two men, one of them later identified as Dean, were standing in front of the house, and when they saw the police car they scurried onto the enclosed porch of the house. The policeman followed, and as he approached he noticed that Dean seemed to place something on the floor of the porch and something else under a book on a shelf; Dean then followed the other man into the house. When the policeman reached the porch, he noticed on the floor a loaded pistol (later discovered to have been stolen), on the shelf ammunition for the pistol, and in a flower pot near the gun crack cocaine in ziplock bags. Police arrested Dean and the other man. A cellphone taken from Dean rang, and an officer answered it and heard the caller ask Dean for "two," which the officer thought meant two "rocks" of crack. More crack was found in the house, in a bedroom into which Dean's companion had run; but the house did not belong to Dean and, so far as appears, he did not live there.

The officer who had answered the phone was prepared to testify at the sentencing hearing about it and also about the crack found in the house, but the judge decided not to take testimony. Yet in computing Dean's sentence under the sentencing guidelines he upped the guidelines range four levels on the basis of the government's contention that Dean not only was the possessor of the pistol found by the policeman on the porch, but had possessed it "in connection with another felony offense," namely the sale of crack. U.S.S.G. § 2K2.1(b)(5). The judge imposed a further two-level increase on the basis of the government's argument that the pistol had been stolen. § 2K2.1(b)(4). The effect of these two boosts was to increase the sentencing range to 135 to 168 months. But as the statutory maximum for Dean's offense was only 120 months, that was the sentence the judge imposed.

The sentencing hearing was conducted after our decision in *Booker* that the Supreme Court later affirmed, and so the judge treated the guidelines as merely advisory. To decide whether the guidelines sentence of 120 months (when the sentence indicated by the guidelines exceeds the statutory maximum, the statutory maximum becomes the guidelines sentence, U.S.S.G. § 5G1.1(a)) was proper, the judge said he'd have "to consider the gravity of the offense, the character of the Defendant, the need to protect the community in this and any disposition," and "the elements of deterrence, punishment, rehabilitation, retribution, all of those factors that go toward assuring the safety of the community, and that an appropriate sentence is rendered." He proceeded to discuss those factors at some length, even to the extent of noting that "defendant has three siblings, and he has disappointed his sisters. His mother said he is a beautiful person. Nice, easygoing guy, although he has a quick temper. His two brothers are incarcerated at different institutions I believe in this State for various offenses. And—however, those [family members] that are not in prison seem to be supportive of the Defendant." The judge concluded that "the guidelines are not far off on this sentence. Fairly accurate."

The Supreme Court's decision in *Booker* requires the sentencing judge first to compute the guidelines sentence just as he would have done before *Booker*, and then—because *Booker* demoted the guidelines from mandatory to advisory status—to decide whether the guidelines sentence is the correct sentence to give the particular defendant. The decision to add four levels to Dean's base offense level because he possessed the gun in connection with illegal drug dealing, and two additional levels because the gun was stolen, was a stage-one determination that brought the guidelines sentence up to the statutory maximum (without

those enhancements, the sentencing range would have been only 77 to 96 months), and Dean is right that the determination was made incorrectly. Rule 32 of the Federal Rules of Criminal Procedure, and in fact the guidelines themselves, require the judge to rule on any disputed portion of a PSI report, Fed. R. Crim. P. 32(i)(3)(B); U.S.S.G. § 6A1.3; *United States v. Sykes*, 357 F.3d 672, 674-75 (7th Cir. 2004); *United States v. Cureton*, 89 F.3d 469, 472-74 (7th Cir. 1996); *United States v. Ameline*, 2005 WL 1291977, at *12 (9th Cir. June 1, 2005) (en banc), and the judge didn't do that. He treated the government's factual contentions (that Dean possessed the pistol in connection with drug dealing and that the pistol was stolen) as "arguments" that he could accept or reject, or factors to which he could give more or less weight, without having to determine whether the factual underpinnings of the government's arguments were true. And so he thought it unnecessary to hear testimony concerning the contested issue of the cellphone call, even though the call was the critical evidence that Dean was a drug dealer rather than merely a customer—for remember that it was not his house in which the drugs were found.

The government argues that the judge didn't have to take testimony from the officer because Dean presented no evidence that the PSI version of the call was incorrect. But his denial that the officer's version was correct would have been evidence if given under oath at the sentencing hearing, and it was bolstered by Dean's claim, for which he might have been able to present third-party evidence, that no one "on the street" calls him by his real name. He had no opportunity to present his own or third-party testimony because, as we said, the judge didn't think that *Booker* requires a sentencing judge to resolve a factual dispute in order to be permitted to give weight to a factual assertion.

So Dean must be resentenced. But we must also consider his other complaint because it bears on the scope of the resentencing hearing. The complaint is that the judge did not do an adequate job of considering the sentencing factors set forth in 18 U.S.C. § 3553(a). That statute reads, so far as bears on the issue, as follows:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed—
>
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> **(B)** to afford adequate deterrence to criminal conduct;
>>
>> **(C)** to protect the public from further crimes of the defendant; and
>>
>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .
>
> **(3)** the kinds of sentences available;
>
>           *   *   *
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

Until *Booker*, the uses that a sentencing judge could make of the factors listed in section 3553(a) were severely circumscribed by the next subsection in order to preserve the mandatory character of the guidelines. 18 U.S.C. § 3553(b). But now that they are advisory, while section 3553(a) remains unchanged, judges will have to consider the factors that the section tells them to consider. "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing." *United States v. Booker, supra*, 125 S. Ct. at 766; see also *id.* at 764-65. "*Booker* suggests that the sentencing factors articulated in § 3553(a), which the mandatory application of the Guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion." *United States v. Trujillo-Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005).

Dean insists that it is the duty of the sentencing judge, in every case and whether or not the defendant invokes any of the factors mentioned in section 3553(a), to make an explicit, articulated analysis of all of them a part of the sentencing process. This, he says, Chief Judge Randa failed to do. Dean also faults the judge for having listed "retribution" as a factor to be considered in sentencing. Dean points out that section 3553(a) doesn't mention retribution. That is true, but he has overlooked the reference in the section to "just punishment"; an influential body of thought teaches that retributive justice *is* justice in criminal punishments. E.g., Michael Tonry, "Sentencing: What's at Stake for the States?: Obsolescence and Immanence in Penal Theory and Policy," 105 *Colum. L. Rev.* 1233, 1240 (2005); Michele Cotton, "Back with a Vengeance: The Resilience of Retribution as an Articulated Purpose of Criminal Punishment," 37 *Am. Crim. L. Rev.* 1313, 1361-62 (2000).

Mention of "just punishment" brings to the surface the practical objection to Dean's submission. If in every federal criminal case the sentencing judge must touch all the bases in section 3553(a) even if not asked to do so by either side, the *Booker* decision will have unwittingly succeeded in doubling the amount of work involved in sentencing. The judge must, as we know, compute the guidelines sentence, just as he had to do before *Booker*. But in addition, according to Dean, the judge must state on the record how each of the factors in section 3553(a) figured in his deciding what sentence to give the defendant. It is not at all helpful that many of the factors are vague and, worse perhaps, hopelessly open-ended. How far, for example, is the judge to delve into the "characteristics" of the defendant? How far is he to go in investigating the possibility of "unwarranted sentencing disparities"? Must he elaborate upon the meaning of "promote respect for law"? And must he discuss all the rival theories of "just punishment" (retributive, deterrent, rehabilitative, incapacitative)?

Section 3553(a), unlike the guidelines themselves after *Booker*, is mandatory. *United States v. Booker, supra*, 125 S. Ct. at 764-65. The sentencing judge cannot, after considering the factors listed in that statute, import his own philosophy of sentencing if it is inconsistent with them. And therefore he can, as a matter of prudence, unbidden by either party, do what Dean wants him to do—write a comprehensive essay applying the full panoply of penological theories and considerations, which is to say everything invoked or evoked by section 3553(a)—to the case before him.

But that is not required; like Chief Judge Randa in the present case, the sentencing judge can discuss the application of the statutory factors to the defendant not in checklist fashion but instead in the form of an adequate statement of the judge's reasons, consistent with section

3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant. *United States v. Hadash*, 2005 WL 1250331, at \*3 (8th Cir. May 27, 2005); *United States v. Mares*, 402 F.3d 511, 518-20 (5th Cir. 2005). "Judges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less." *United States v. George*, 403 F.3d 470, 472-73 (7th Cir. 2005). This shortcut is justified by the indeterminate and interminable character of inquiry into the meaning and application of each of the "philosophical" concepts in which section 3553(a) abounds.

However, the farther the judge's sentence departs from the guidelines sentence (in either direction—that of greater severity, or that of greater lenity), the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed. (Cf. *United States v. Dalton*, 404 F.3d 1029, 1033-34 (8th Cir. 2005), reversing a 60-month sentence when the minimum guidelines sentence was four times as long.) But although the judge must therefore articulate the factors that determined the sentence that he has decided to impose, his duty "to consider" the statutory factors is not a duty to make findings, as we have held in dealing with the directive of the Victim and Witness Protection Act that the sentencing judge "shall consider" specified factors in deciding whether to order a criminal defendant to pay restitution. 18 U.S.C. § 3663(a)(1)(B)(i). Not only are findings not required (with a qualification noted below), but "lack of findings coupled with an award of full restitution implies that the defendant has failed to carry this burden." *United States v. Ahmad*, 2 F.3d 245, 247 (7th Cir. 1993).

Explicit factfinding *is* required, however, if, though only if, contested facts are material to the judge's sentencing decision. A judge who thinks that a particular contested characteristic of a defendant may be decisive to the choice of sentence, such as the defendant's mental or emotional state, must resolve the factual issue in the usual way, that is, by making findings on the basis of evidence, just as he would have to do in applying the sentencing guidelines if, as in the present case, the calculation of the guidelines sentence depends on the resolution of a factual dispute.

This does not mean trial by jury, proof beyond a reasonable doubt, consideration limited to evidence that satisfies the requirements of admissibility that are found in the Federal Rules of Evidence, or any other such formalities. U.S.S.G. § 6A1.3; *United States v. Polson*, 285 F.3d 563, 566-67 (7th Cir. 2002); *United States v. Kroledge*, 201 F.3d 900, 908-09 (7th Cir. 2000); *United States v. Hough*, 276 F.3d 884, 891 (6th Cir. 2002); *United States v. Atkins*, 250 F.3d 1203, 1212-13 (8th Cir. 2001); see also 18 U.S.C. § 3661. Only when factual determinations *require* a particular sentence does the Sixth Amendment come into play, imposing formalities on factual determinations (other than criminal history) that influence sentence length. *United States v. Booker, supra*, 125 S. Ct. at 750; see also *Shepard v. United States*, 125 S. Ct. 1254, 1262-63 (2005); *United States v. Carter*, 2005 WL 1367195, at *9 (7th Cir. June 10, 2005); *United States v. Iskander*, 407 F.3d 232, 242-43 (4th Cir. 2005); *United States v. Mashek*, 406 F.3d 1012, 1014-15 (8th Cir. 2005); *United States v. Coles*, 403 F.3d 764, 766 (D.C. Cir. 2005). With the guidelines now merely advisory, factfindings that determine the guidelines sentence do not determine the actual sentence, because the sentencing judge is not required to impose the guidelines sentence; and so the Sixth Amendment is not in play.

Our focus thus far has been on cases in which the sentencing judge is minded to impose a sentence outside the guidelines range. Recognizing that the guidelines are promulgated and continually revised by an agency staffed by experts (the Sentencing Commission), the court in *United States v. Mares, supra*, 402 F.3d at 519, said that "if the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines . . . . When the judge exercises her discretion to impose a sentence within the Guideline range and states for the record that she is doing so, little explanation is required." But the defendant must be given an opportunity to draw the judge's attention to any factor listed in section 3553(a) that might warrant a sentence different from the guidelines sentence, for it is possible for such a variant sentence to be reasonable and thus within the sentencing judge's discretion under the new regime in which the guidelines, being advisory, can be trumped by section 3553(a), which as we have stressed is mandatory. *Simon v. United States*, 361 F. Supp. 2d 35, 39-41 (E.D.N.Y. 2005); *United States v. Kelley*, 355 F. Supp. 2d 1031, 1035-37 (D. Neb. 2005); *United States v. Ranum*, 353 F. Supp. 2d 984, 985-86 (E.D. Wis. 2005).

The judgment is vacated and the case remanded to the district court for further proceedings concerning the two enhancements, and for resentencing on the basis of what those proceedings yield.

A true Copy:

     Teste:

                       _____

                       *Clerk of the United States Court of*
                       *Appeals for the Seventh Circuit*